NINLLIAT, PLAINTIFF AND APPELLANT, *v.* SURIÑAC ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Mayagüez in a Rescissory Action.

No. 1369.—Decided June 6, 1916.

SALE WITH RIGHT TO REPURCHASE—RECORD OF CONSUMMATION—THIRD PERSON.— When a deed of sale with right to repurchase recorded in the registry gives the vendor two different periods in which to repurchase, the second being at the option of the vendor, at the expiration of the first period the vendee may require the registrar to enter the corresponding marginal note of consummation upon the record; and in order that the second period may be effective against a third person a new instrument must be executed and recorded in the registry of property.

ID.—INCOMPATIBLE RIGHTS.—According to section 1172 of the Civil Code, an obligation is extinguished by a later one when they are incompatible in every respect; consequently the right to acquire real property by repurchase is extinguished by the actual and effective purchase of the same because the two rights are incompatible.

ID.—RESCISSION OF SALE—FRAUD—INJURY—CAUSE OF ACTION.—When it is alleged in a complaint in an action to rescind the sale of a certain lot and buildings made by a marshal at public auction to the defendant as representative of his minor children that the defendant knew that the said property belonged to the plaintiff and maliciously procured the levy and sale thereof with the object of defrauding and wrongfully depriving him of the ownership of the same, the said complaint sets up a cause of action for it alleges an injury for which the plaintiff is entitled to reparation.

ID.—THIRD PERSON—CAPACITY.—A person who purchases a thing knowing that his vendor is not the owner thereof has not the character of a third person when the thing had been lawfully acquired previously by another person; nor are the minor children of a vendee, who purchased the property for them

knowing that it did not belong to the vendor, third persons, because the personality of the said vendee as such cannot be separated from that of the representative of his children.

ID.—GOOD FAITH—RECORD OF TITLE.—A person who knows of an act or contract by which another person has alienated the ownership of a thing and, therefore, knows of his own knowledge that it belongs to another person, does not act in good faith when he purchases the same or acquires it by any other kind of contract from the former owner with full knowledge that he is not the present owner and, availing himself of what may perhaps be the carelessness of the first purchaser in not having his title recorded, hastens to have his own title recorded in the registry so that under article 17 of the Mortgage Law the owner cannot record his title.

The facts are stated in the opinion.

*Messrs. José Sabater* and *Francisco Soto Gras* for the appellant.

*Messrs. Fernando Vázquez* and *N. B. K. Pettingill* for the appellees.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal by the plaintiff, Luis Ninlliat, from a judgment of the District Court of Mayagüez of May 28, 1915, dismissing the complaint on the ground that the facts alleged therein did not constitute a cause of action.

The fundamental allegations of the complaint, which we must accept as true for the decision of the appeal, are as follows:

1. By a public deed of April 2, 1898, which is recorded in the Registry of Property of Mayagüez, the plaintiff, Luis Ninlliat, purchased the lot described in the complaint from the Mayagüez firm of J. Tornabells & Company.

2. By another deed of the same date, which is also recorded in the registry of property, the vendee, Luis Ninlliat, sold the same lot to Luis Arán y Lancy.

3. Said deed of sale from Luis Ninlliat to Luis Arán y Lancy contains the following clause:

"Third. This sale is made on the condition that Ninlliat shall have the use of the property for a period of three years beginning on the first day of this month, paying Arán sixty dollars monthly as rental, and that if during the said period of three years Ninlliat shall repay

to Arán the said sum of six thousand dollars, the latter will resell to him the whole property in the same condition in which it may be at the time of its reconveyance, it being understood that if the said amount of six thousand dollars shall not be repaid within the said period Arán shall be released from the obligation to resell the property to Ninlliat; but in this event the said Arán agrees that after entering into possession of the property he will lease it to Ninlliat for a further term of two years, in order that he may continue to make whatever use he please of the products thereof, provided that he keep the property in good condition and continue to pay the monthly rental of sixty dollars, it being finally agreed that Arán shall resell the property to Ninlliat during the said renewed period of two years provided the latter repay to him the six thousand dollars, which is now fixed as the price of the whole property subject to the said buildings thereon being made habitable."

4. The first term of the said condition having expired, Luis Arán applied to the registrar of Mayagüez and obtained the entry of a marginal note of consummation of sale on the record of the said contract of purchase and sale.

5. Before the expiration of the second term of two years fixed for the repurchase of the lot by the vendor, Ninlliat purchased the same by a public deed of September 5, 1902, and mortgaged the property to Arán to secure the payment of the deferred balance of two thousand two hundred dollars due on the purchase price.

6. The plaintiff alleges that through the negligence or oversight of the agent whom he had charged with having the said deed of September 5, 1902, recorded in the registry of property, it was not so recorded, although Ninlliat was of the mistaken belief that it was recorded until he found that he had been deprived of his property by the defendants.

7. It appears from the Registry of Property of Mayagüez that after the expiration of the first term of three years mentioned in the said condition, a marginal note was entered in the registry on June 29, 1901, of the consummation of the contract, but there is no entry in the said registry of the

consummation of the sale by the expiration of the other term of two years referred to in the same condition.

8. Plaintiff Ninlliat has paid the full amount of the mortgage created by the deed of September 5, 1902, in favor of Luis Arán, and the widow of the latter, defendant Francisca Arán, as administratrix of the estate of the deceased Luis Arán, pursuant to an order of the District Court of Mayagüez of February 11, 1909, executed, on March 9, following, a deed of acquittance and cancellation in favor of Ninlliat, which deed was not recorded in the registry of property.

9. The plaintiff began and continued to erect on the said lot at various times until the year 1908 certain buildings which are not completed and which he estimates are worth from six thousand to eight thousand dollars, having constructed the same with his own money, in good faith and in the belief that he did so for his own benefit and on his own property.

10. Camilo Suriñac, in representation of his minor children, the defendants, brought an action of debt in the District Court of the United States for Porto Rico against Francisca Arán as administratrix of the estate of the late Luis Arán, and on July 19, 1909, obtained judgment for $2,037.89 and $38.80 costs.

11. In execution of the said judgment, on August 7, 1909, the United States Marshal had recorded in the registry of property a levy on the property in question.

12. On September 13, 1909, the said marshal sold at public auction all the right, title and interest of Luis Arán in and to the property to Attorney Fernando Vázquez, defensor of the minor defendants, for the sum of three hundred dollars, and the corresponding deed of sale was executed and recorded in the registry on March 22, 1910.

13. The plaintiff had no notice of the announcement of the public sale of the lot; first, because its description is very much like that of other lots situated at the same place and no allusion was made in the notice of sale to the build-

ings constructed thereon, which are much more important than the lot itself; second, because the said notice was published in a local newspaper of Mayagüez of small circulation known as *La Bandera Americana.*

14. Camilo Suriñac, father and representative of the Suriñac children, was an employee of J. Tornabells & Company, from whom Luis Ninlliat originally acquired the lot, and on the dates when the plaintiff acquired the lot and sold it to Luis Arán y Lancy said Suriñac was one of the liquidators of the said firm as well as an employee of the commercial establishment known as L. Arán, being cognizant of the transsactions between the plaintiff and Luis Arán regarding said lot.

15. Camilo Suriñac had personal knowledge that, although the lot was recorded in the registry in the name of Luis Arán, the plaintiff was the sole owner and in possession thereof, and also that the buildings erected thereon were constructed by the plaintiff in good faith.

16. Notwithstanding such knowledge, Camilo Suriñac maliciously procured the levy and sale of the said property, and with the object of defrauding the plaintiff and wrongfully depriving him of the ownership thereof, acquired the same at public auction in the name of the minor defendants, for the insignificant sum of three hundred dollars, which did not represent the fortieth part of its real value.

17. Upon the death of Luis Arán y Lancy he was succeeded by his heirs, defendants Francisca Arán and Consuelo Arán.

18. The defendants have no property to respond for the civil liability incurred by reason of their acts, and the plaintiff alleges that his only remedy at law for the loss he has sustained is by the action for rescission set up in the complaint.

The plaintiff adds that both the levy and the title deed recorded in favor of the defendant minors are affected by the resolutory condition that the plaintiff might repurchase

the lot within the second term of two years referred to in the deed of April 2, 1898, inasmuch as the registry contains no entry of the consummation of sale by reason of the expiration of the said term, within which the plaintiff became the absolute owner of the property under the deed of September 5, 1902.

The complaint concludes with a prayer for judgment rescinding the sale by Harry S. Hubbard, United States Marshal for the District of Porto Rico, of the lot and buildings appurtenant thereto, on September 13, 1909, and as a consequence ordering the cancellation in the registry of property of the entry of consummation of sale referred to in clause 4 of the complaint, as well as of the record of the sale of the lot to the defendants, the proper writ for that purpose to be issued in duplicate to the Registrar of Property of Mayagüez.

Defendants Suriñac answered the complaint, alleging, among other defenses, that the complaint did not set up facts sufficient to constitute a cause of action. After hearing the parties the court sustained the said plea and on May 28, 1915, rendered judgment dismissing the complaint with costs against the plaintiff, from which judgment, as stated at the beginning of this opinion, the present appeal was taken.

The lower court is justified in holding that the marginal note of consummation of sale entered on the record of the sale of the lot by Luis Ninlliat to Luis Arán by the deed of April 2, 1898, is valid in law.

Clause 3 of the said deed of April 2, 1898, contains two provisions: First, that if during a period of three years, beginning April 1 of the said year, Ninlliat should repay to Arán the six thousand dollars, the price of the property, Arán would resell the property to Ninlliat, but was under no obligation to do so if the said amount were not repaid within that time; second, that if the said sum of six thousand dollars were not repaid within the three years mentioned, Arán

agreed to lease the property to Ninlliat for a further period of two years, allowing him to utilize the products thereof in the manner that he might deem fit, at a monthly rental of sixty dollars, it being further agreed that, if during such renewed period of two years Ninlliat should repay the said six thousand dollars, Arán would resell the property to him.

The language of the condition transcribed prescribes that the property might be repurchased during two periods, one of three and the other of two years, and not during one single period of five years. If the vendee had intended to allow the vendor to exercise his right to repurchase during a period of three years which would be automatically extended for two years more, he would have so stated in the deed or would have fixed the term of five years without stipulating that the right of repurchase after the termination of the term of three years should be subject to an agreement to that effect for a further period of two years.

It appears from the complaint that Ninlliat did not repay to Arán the purchase price of six thousand dollars during the three years alluded to in the first part of the third clause of the deed of April 2, 1898; and as the non-performance of resolutory or rescissory conditions contained in recorded instruments or contracts should be made to appear of record in the registry by means of a marginal note, pursuant to subdivision 1 of article 16 of the Mortgage Law, the purchaser, Arán, under the provisions of the said article, could and did apply to the registrar for the entry of a marginal note of consummation of sale on the record of the contract of purchase and sale of the property. That note was not premature, as contended by the plaintiff, for the term of three years fixed for the repurchase of the property had expired and it was not necessary to allow two years more to elapse. Therefore, the note is not invalid and section 4 of the Civil Code and article 33 of the Mortgage Law, which the appellant relies on in his brief and claims to have been violated by the judgment appealed from, are inapplicable to the case.

Under the third clause of the deed of April 2, 1898, after the expiration of the three years allowed Ninlliat for the repurchase of the property, it is obvious that he could require Arán to grant him a further term of two years in which to repurchase the property under the same conditions as those of the first period. Such new term of two years, whether regarded as an extension of the first term or not, should have been recorded in the registry of property in order to be effective against third persons; and for that purpose the corresponding public deed was necessary, this being the only means of procuring its admission to record, pursuant to articles 2 and 3 of the Mortgage Law.

Instead of following the said procedure Ninlliat purchased the property unconditionally by a deed of September 5, 1902, and created a voluntary mortgage thereon in favor of Arán to secure the payment to the latter of the deferred balance of two thousand two hundred dollars due him on the purchase price.

By virtue of that deed Ninlliat's right to repurchase under the second part of the condition of the repurchase clause was extinguished by his acquiring the full ownership of the lot. Section 1172 of the Civil Code provides that an obligation is extinguished by a subsequent obligation when the old and the new are incompatible in all points, and such incompatibility arose in the present case inasmuch as the right to acquire a thing by repurchase is extinguished by the actual acquisition of the thing itself.

We are of the opinion that the facts set up in the complaint do not constitute a cause of action on which to base a claim for the rescission of the sale of the lot and buildings by Harry S. Hubbard, United States Marshal for Porto Rico, on September 13, 1909, in so far as said claim is based on the nullity of the note of consummation of sale of the lot by Luis Ninlliat to Luis Arán by the deed of April 2, 1898, with right to repurchase. Said note of consummation was not premature, but, as already stated, was made at the proper

time and cannot of itself vitiate the sale made by the United States Marshal on September 13, 1909.

But it is alleged also in clauses 14, 15 and 16 of the complaint that Camilo Suriñac had knowledge of the transactions between Ninlliat and Luis Arán regarding the lot and personally knew that the plaintiff was the sole owner of the lot, although it was recorded in the name of Luis Arán, and that he knew besides that the buildings erected thereon had been constructed in good faith by Ninlliat, notwithstanding which Suriñac maliciously procured the levy and sale of the said property with the object of defrauding the plaintiff and wrongfully depriving him of the ownership of the said property and acquired the property in the name of his minor children at the public sale at a price which did not represent the fortieth part of the real value of the property sold.

We are of the opinion that these allegations, in conjunction with others of the complaint, constitute a cause of action, for they show the existence of an injury for which the plaintiff is entitled to relief. According to the allegations of the complaint, Luis Ninlliat purchased the property in question from Luis Arán by a public deed of September 5, 1902, and constructed buildings thereon, valued at from six thousand to eight thousand dollars, in good faith and in the belief that he was erecting them on his own property; and, knowing these facts, Suriñac, in representation of his minor children, bid in the lot and buildings as the property of Arán. Suriñac cannot claim the benefits which the law grants to third persons, for he does not come under that category, knowing as he did that the lot and buildings sold as the property of Arán had been previously acquired lawfully by Ninlliat. *Surís* v. *Quiñones et al.*, 17 P. R. R. 614. And it cannot be contended that Suriñac did not purchase the property for himself, but for his minor children, who, therefore, are third persons, for the personality of Camilo Suriñac as such cannot be separated from his personality as representative of his minor children, and the knowledge which the father possessed of the sale of

the lot and buildings previously made by Luis Arán to Luis Ninlliat must necessarily prejudice them. *Rivas* v. *Boigt,* I S. P. R. 219, 224–225.

On page 587, Volume I, of his work on this subject, commenting on article 27 of the Mortgage Law, which provides that for the purposes of the said law a third person shall be considered one who has not been a party to the recorded instrument or contract, Gómez de la Serna raises the question of whether the notary and witnesses who take part in the execution of a public instrument are third persons, and maintains the negative in the following words:

"A person does not act in good faith who, after witnessing an act or contract by virtue of which another conveys his ownership of the thing, and knowing, therefore, of his own personal knowledge that it belongs to the one who acquired it in his presence, obtains it by purchase, or in any other manner, from the former owner with full knowledge that it is not his property, and, taking advantage of the possible carelessness of the rightful owner in omitting to record his title, hastens to record the property in his own name in the registry so that, pursuant to article 17, the title of the rightful owner acquired by the instrument which he signed as notary or witness may be denied admission to record. To give preference to a title acquired in such bad faith, to the detriment of the person who acquired the same thing in good faith, would be neither moral nor just, and if it prevailed it would open wide the door to fraud and lamentable abuses. * * *."

We accept this doctrine as sound and consider it applicable to the present case, and we repeat what we said in the case of *Rivas* v. *Boigt, supra*:

"Although the Mortgage Law is a law of credit, whose provisions apply exclusively to interests in real property, it cannot be presumed to lack the other qualities which laws should possess. One of these is that a law shall be just, which it would not be if by reason of the mere strict compliance with its provisions and the non-observance of the most elementary principles of honesty it permitted acts which an honest and conscientious man would repudiate as unjust, to be regarded as lawful and binding."

Knowing, as Camilo Suriñac did, that the lot and buildings belonged to plaintiff Ninlliat, the recording of the same in the registry of property in the name of his children cannot serve of itself alone as a protection against the claims of the plaintiff or prevent a reparation of his infringed rights.

We merely decide the legal question of whether the facts alleged in the complaint constitute a cause of action and refrain from reviewing and considering anything outside of that question.

Taken as a whole, the complaint shows a cause of action and therefore the judgment appealed from should be

*Reversed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.